UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                               :

SIRE SPIRITS, LLC,                  :

                       :

             Petitioner,       :

                       :           21 Civ. 7343 (JPC)

      -v-                  :

                       :           <u>OPINION AND</u>

                       :              <u>ORDER</u>

MITCHELL GREEN,         :

                       :

             Respondent.     :

                       :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Sire Spirits, LLC has petitioned to confirm an arbitration award involving a conflict with a former employee, Mitchell Green. Green has cross-petitioned to vacate the award. Because no grounds exist to modify or vacate the award, the Court confirms the award.

## I. Background

### A. Underlying Facts[1]

Sire Spirits is a wine and liquor company owned by Curtis Jackson (commonly known as 50 Cent) that sells champagne and cognac through its two brands: Le Chemin du Roi Champagne and Branson Cognac. Partial Final Award at 2; Pet. ¶ 3. Sire Spirits buys its champagne and cognac from suppliers through purchase agreements. Partial Final Award at 2; Pet. ¶ 17. Green, who began working for Sire Spirits as a consultant in 2016 and eventually was hired as the

---

[1] The Court takes the following facts from the Amended Petition seeking to confirm the arbitrator's award, Dkt. 18 ("Petition" or "Pet."), the arbitrator's Partial Final Award, Pet., Exh. A ("Partial Final Award"), the arbitrator's Final Award, Pet., Exh. B ("Final Award"), Green's Cross-Petition seeking to vacate the award, Dkt. 23 ("Cross-Petition" or "Cross-Pet."), and the Declaration of Eric Breslin in opposition of the motion to confirm and in support of the motion to vacate, Dkt. 38 ("Breslin Declaration").

company's Director of Brand Management in 2018, negotiated many of these purchase agreements.  Partial Final Award at 2, 9; Pet. ¶¶ 15-16.

In his roles, Green helped Sire Spirits identify sources of champagne and cognac for its two brands.  First, Sire Spirits signed an agreement with Champagne Castelnau ("Castelnau"), a French winery, pursuant to which Castelnau agreed to supply champagne to Sire Spirits.  Partial Final Award at 6; Cross-Pet. ¶ 21.   Second, Sire Spirits signed an agreement with Raymond Ragnaud ("Ragnaud"), a French distiller, which entailed Ragnaud agreeing to supply cognac to Sire Spirits.  Partial Final Award at 6; Cross-Pet. ¶ 21.

Unknown to Sire Spirits, however, Green separately signed his own agreements with Castelnau and Ragnaud.  Partial Final Award at 8; Pet. ¶ 16.  These agreements gave Green a commission, known as an agency fee, for each bottle of champagne or cognac sold to Sire Spirits. Partial Final Award at 8; Pet. ¶ 17.  Before entering into these agency fee agreements, Green signed non-disclosure agreements with Castelnau and Ragnaud.  Pet. ¶ 16.

In his agency fee agreement with Castelnau, Green, through his fully owned company Q Branch Consulting, LLC, agreed to "fulfill the interest of [Castelnau] to the best of its abilities" and "not sell or represent any other Champagne to Sire Spirits" besides Castelnau.  Partial Final Award at 6.  Green had a similar contract with Ragnaud.  Green's agency fee agreement with Ragnaud required him, through Q Branch, to "fulfill the interests of Ragnaud to the best of its abilities."  *Id.* (quotations and alterations omitted).  These agreements paid Green, through Q Branch, a commission and required Green to keep the agreements confidential.  *Id.*

Green was not the only person receiving agency fees from Sire Spirits's deal with Ragnaud. A Castelnau executive, Arnaud Fabre, received agency fees for the cognac that Sire Spirits bought from Ragnaud.  Partial Final Award at 12; Cross-Pet. ¶¶ 35-36.  The arbitrator found, however,

2

insufficient evidence to establish that Green arranged for Ragnaud to pay this agency fee to Fabre. Partial Final Award at 12; Cross-Pet. ¶ 36.

These agency fee agreements yielded large commissions for Green and Fabre.  In total, Green, through Q Branch, received $2,226,988 in agency fees, and Fabre received $948,096 in agency fees.  Partial Final Award at 11-12; Pet. ¶¶ 19-20; Cross-Pet. ¶¶ 35-36.

Green kept the agreements and the sizable agency fees, including Fabre's agency fees, secret from Sire Spirits.  Partial Final Award at 8; Pet. ¶ 21.  In fact, Green actively tried to prevent Sire Spirits from discovering the agency fees.  Partial Final Award at 10.  When, for instance, Fabre emailed Green and Jackson's assistant pricing for the champagne that disclosed the commissions, Green emailed only Fabre and asked him to "please write back and revise the pricing, as [Jackson and his assistant] only need to know the final price per bottle, and not the upcharge for the agent fee."  *Id.*

In February 2020, Green finally came clean, and told Jackson about the agency fees.  Partial Final Award at 2, 9; Pet. ¶ 21.  But Green did so because someone tried to extort him by threatening to expose the agency fees unless Green agreed to pay the person.  Partial Final Award at 2; Pet. ¶ 21.  After Sire Spirits investigated the issue, it fired Green for cause because he had collected undisclosed agency fees.  Partial Final Award at 2; Pet. ¶ 22.

## B.    Employment Agreements

In connection with his employment at Sire Spirits, Green signed two identical one-year Employment Agreements on July 11, 2018 and then on June 5, 2019.  Partial Final Award at 5; Pet. ¶¶ 8-9, Exh. C ("2018 Employment Agreement"), Exh. D ("2019 Employment Agreement").  Those agreements required Green to "devote all of his business time and his best efforts . . . on a full-time basis, exclusively to the advancement of [Sire Spirits]."  2018 Employment Agreement

3

¶ 3(b); 2019 Employment Agreement ¶ 3(b); Partial Final Award at 5.  The Employment

Agreements also prohibited Green from "providing services to any Person who has entered into

discussions, a letter of intent or definitive agreement for the purpose of preparing to engage in or

derive any economic benefit from one or more activities of the Business[2]."  2018 Employment

Agreement ¶ 8(a); 2019 Employment Agreement ¶ 8(a); Partial Final Award at 5.

> The two Employment Agreements included identical arbitration clauses that required that:

> [A]ny legal or equitable claim or controversy arising out of or relating to this Agreement . . . shall be settled exclusively by binding arbitration in New York, New York . . . conducted in accordance with the Federal Arbitration Act and the National Rules for the Resolution of Employment Disputes of the American Arbitration Association.

2018 Agreement ¶ 22; 2019 Agreement ¶ 22; Pet. ¶ 10.  The Employment Agreements also had a

New York choice-of-law provision as well as a clause providing for venue in a federal or state

court in New York for any legal disputes arising out of or relating to the agreements:

> This contract shall be construed and enforced under and be governed in all respects by the laws of the State of New York, without regard to the conflict of laws principles thereof.  For the purposes of any claim or cause of action in any legal proceeding initiated over any dispute arising out of or relating to this Agreement . . . such claim or cause of action shall be initiated in any federal or state court located within New York, and the parties further agree that venue for all such matters shall lie exclusively in those courts.

2018 Employment Agreement ¶ 23; 2019 Employment Agreement ¶ 23; Pet. ¶ 6.  The

Employment Agreements also stated that "the prevailing party" in "any suit, action or arbitration

proceeding [] instituted under or in relation to this Agreement . . . shall be entitled to recover from

---

[2] The Employment Agreements defined the "Business" as Sire Spirits's "brand development of uniquely branded alcoholic beverages, including without limitation product development, brand development, sourcing, vendor relationships, marketing, importing, distribution, sales, and compliance with respect to the alcoholic beverage businesses of [Sire Spirits] and of any of its direct or indirect affiliates, subsidiaries or otherwise related entities." 2018 Employment Agreement ¶ 1; 2019 Employment Agreement ¶ 1.

the losing party all fees, costs and expenses of enforcing or defending any right of such prevailing party . . . including without limitation, such reasonable fees and expenses of attorneys and accountants." 2018 Employment Agreement ¶ 21; 2019 Employment Agreement ¶ 21; Pet. ¶ 13.

## C.   Arbitration

On March 23, 2020, Sire Spirits filed a demand for arbitration against Green with the American Arbitration Association ("AAA"). Pet. ¶ 24. On April 22, 2020, the AAA confirmed Arthur Felsenfeld as the arbitrator after neither party objected to his appointment. *Id.* ¶ 31, Exh. G.

One month later, on May 26, 2020, Sire Spirits filed a more detailed statement of its claims against Green. *Id.* ¶ 25. It claimed breach of contract, breach of fiduciary duty, fraud, unjust enrichment, and conversion, and sought an accounting. *Id.* ¶ 25; Partial Final Award at 2. That same day, Green counterclaimed against Sire Spirits, alleging breach of contract, breach of the covenant of good faith and fair dealing, conversion, fraud, conspiracy, and unjust enrichment, and seeking an accounting. Partial Final Award at 2-3; Pet. ¶ 26.

On June 12, 2020, Green moved to entirely dismiss Sire Spirits's statement of claim in the arbitration for failing to join a necessary party, CCVUSA,[3] and moved to dismiss Sire Spirits's fraud claim as duplicative. Partial Final Award at 3; Pet. ¶ 27. Green also asked to consolidate the arbitration with a related arbitration in which Sire Spirits brought claims against CCVUSA. Partial Final Award at 3. That same day, Sire Spirits moved to dismiss Green's counterclaims for conversion, conspiracy, unjust enrichment, and accounting. *Id.*

On July 23, 2020, the arbitrator denied Green's motion to dismiss and consolidate the proceedings, as well as Sire Spirits's motion to dismiss Green's counterclaims for conversion,

---

[3] CCVUSA is a company that Green has a majority interest in. Partial Final Award at 2, 7. CCVUSA had an 8% equity interest in Sire Spirits's subsidiary, Sire Champagnes. *Id.* at 7.

unjust enrichment, and accounting.  *Id.*  But he granted in part Sire Spirits's motion to dismiss Green's conspiracy counterclaim against Stephen J. Savva, Sire Spirits's General Counsel.  *Id.*

On October 19, 2020, Green moved to compel Sire Spirits to produce documents about the valuation of Sire Spirits's subsidiary, Sire Champagnes.  Cross-Pet. ¶ 43, Exh. 9.  The arbitrator granted the motion in part.  *Id.* ¶ 44, Exh. 10.  He ordered Sire Spirits to produce Sire Champagnes's annual reports, certificate of formation, tax returns, general ledger, and bank statements.  *Id.* at 1.

On December 16, 2020, Sire Spirits moved for the arbitrator to (1) find Green liable for its breach of contract claim; (2) dismiss Green's counterclaims for conversion, conspiracy, unjust enrichment, and accounting; and (3) exclude Green's expert witness, who Green wanted to provide a valuation of Sire Champagnes.  *Id.* at 4.  A month later, on January 25, 2021, the arbitrator (1) denied Sire Spirits's motion for its breach of contract claim; (2) granted Sire Spirits's motion to dismiss Green's counterclaims for conversion, conspiracy, unjust enrichment, and accounting; and (3) denied Sire Spirits's motion to exclude Green's valuation expert.  *Id.*

On February 1, 2021, Green again moved to compel Sire Spirits to produce Sire Champagnes's tax returns, general ledger, and bank statements.  *Id.* ¶ 46, Exh. 11 at 1.  Two days later, on February 3, 2021, the arbitrator denied the motion to compel.  *Id.* ¶ 47, Exh. 12 at 1.

The arbitrator then held seven days of evidentiary hearings, from April 19, 2021 to April 23, 2021, and May 7, 2021 to May 10, 2021.  Partial Final Award at 4.  During those hearings, nine witnesses, including expert witnesses, testified and the arbitrator received "numerous exhibits" in evidence.  *Id.*

After the hearing, on August 25, 2021, the arbitrator issued a Partial Final Award.  *Id.* at 1. The Partial Final Award determined the parties' liability and damages for all claims, "except for

the determination of the amount of attorneys' fees and expenses, arbitration costs[,] and interest on compensatory damages." *Id.* at 18.  The arbitrator found that Green committed breach of contract, breach of fiduciary duty, fraud, and unjust enrichment.  *Id.* at 5-11.  He also dismissed Green's counterclaims with prejudice.  *Id.* at 16-17.

In finding Green liable, the arbitrator reasoned that Green had not only made "material omissions" by failing to disclose that he received agency fees but that he took "affirmative steps . . . to conceal the fact that he was receiving such fees, thus demonstrating that the failure to disclose was intentional." *Id.* at 9-10.  He also found that as a result of Green's receipt of agency fees from Sire Spirits's suppliers, "the cost of the product charged to Sire Spirits per bottle substantially increased," which "worked against Sire Spirits' interests" and "imposed a conflicting obligation" on Green.  *Id.* at 6-7.  He also rejected Green's argument "that Sire Spirits knew or should have known that [Green] was receiving the agency fees," explaining that the defense was not supported by "[t]he weight of the evidence." *Id.* at 8.  For example, "even Green himself concluded that Jackson must not have been aware that Green had been receiving agency fees." *Id.* And the arbitrator rejected Green's argument that Sire Spirits fired him as a pretext "to strip him of his interest in Sire Champagnes": "Green's taking of millions of dollars of undisclosed commissions and other actions provided sufficient grounds for the termination of Green's employment for cause." *Id.* at 8, 16.

Besides finding Green liable for agency fees he received, the arbitrator also found Green liable for agency fees that Ragnaud paid to Fabre.  *Id.* at 12.  He found that although "the evidence does not establish that Green arranged for the payment of that fee," Green violated his fiduciary duty to Sire Spirits by not "disclos[ing] to Sire Spirits the payment of such fee to Fabre." *Id.*  The arbitrator also found that Green breached his Employment Agreement by not disclosing these fees

because the Agreement "require[ed] Green to devote his best efforts exclusively to the advancement of the Business of Sire Spirits." *Id.*

In total, the Partial Final Award awarded Sire Spirits $3,462,695 in compensatory damages: $2,226,988 for fees paid directly to Green and $948,096 for fees paid from Ragnaud to Fabre. *Id.* at 12, 17.  It also disgorged Green of his compensation and benefits from working at Sire Spirits in the amount of $275,515.  *Id.* at 16.  Lastly, the Partial Final Award directed that Sire Spirits "shall recover its reasonable attorneys['] fees and expenses and arbitration costs in such amounts as to be determined in the Final Award."  *Id.* at 18.  The Final Award would also determine the amount of interest to be added to the awarded compensatory damages.  *Id.* at 17.

After the arbitrator issued the Partial Final Award, Sire Spirits made more detailed submissions on its attorneys' fees, costs, and interest.  Final Award at 2.  Green opposed Sire Spirits's submissions, arguing that the arbitrator had discretion to entirely deny Sire Spirits's application for attorneys' fees and maintaining that he lacked the ability to pay.  *Id.* at 2-3.  In the alternative, Green urged the arbitrator to exercise his discretion in determining the amount of fees to award.  *Id.* at 2.

After considering the arguments, the arbitrator issued the Final Award.  The Final Award completely incorporated the Partial Final Award.  *Id.* at 2.  It also rejected each of Green's arguments and awarded Sire Spirits an additional $2,731,598 in attorneys' fees, costs, and damages.  *Id.* at 2-7.  This additional award consisted of $825,434 in simple interest on the agency portion of compensatory damages, $1,469,374 in attorneys' fees, $302,115 in costs (excluding fees charged by the AAA or by the arbitrator), and $134,675 in fees charged by the AAA and the arbitrator.  *Id.* at 6-7; Pet. ¶ 59.  This brought the total amount awarded to Sire Spirits and against Green to $6,194,293.  Pet. ¶ 61.

**D.      Procedural History**

Sire Spirits first initiated this action in September 2021 when it petitioned to confirm the Partial Final Award.  Dkt. 6.  On October 29, 2021, the arbitrator issued the Final Award.  *See* Final Award at 7.  Two weeks later, on November 12, 2021, Sire Spirits filed the amended Petition, seeking confirmation of the Final Award and the Partial Final Award, as well as "an entry of judgment of $6,194,293 against Mr. Green."  Pet. ¶ 2.  On December 3, 2021, Green filed his Cross-Petition.  He asks the Court to deny Sire Spirits's petition to confirm the Partial Final Award and Final Award and to vacate the Partial Final Award and Final Award.  Cross-Pet. ¶12.  In seeking vacatur of the arbitration award, Green also asks the Court to grant him additional discovery.  *Id.*  The parties then briefed their petitions to confirm and vacate the arbitration award. *See* Dkt. 19; Dkt. 36 ("Green Br."); Dkt. 37 ("Green Reply"); Dkt. 39.

## II.  Legal Standard

When reviewing an arbitration award under the Federal Arbitration Act ("FAA"), 9 U.S.C § 1 *et seq.*, a court "'can confirm and/or vacate the award, either in whole or in part.'" *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)).  "[A]rbitral awards and the arbitral process" deserve "strong deference."  *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007).

"Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'"  *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)).  The FAA sets out four explicit grounds to vacate an arbitration award: (1) "the award was procured by corruption, fraud, or undue means," (2) the arbitrators showed "evident partiality or corruption," (3) "the arbitrators were guilty of

misconduct" that prejudiced "the rights of any party," or (4) "the arbitrators exceeded their powers." 9 U.S.C. § 10(a).  Besides these four explicit bases, the Second Circuit has put a "judicial gloss on the specific grounds for vacatur of arbitration awards" in the FAA and recognized that a "court may set aside an arbitration award if it was rendered in manifest disregard of the law." *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011) (cleaned up); *accord Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2d Cir. 2021).

These stringent standards mean that a petitioner "must clear a high hurdle" to vacate an arbitration award.  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010).  A petition to vacate an arbitration award is "not an occasion for *de novo* review of an arbitral award." *Scandinavian Reinsurance Co.*, 668 F.3d at 71-72 (quotations omitted).  Instead, the review is "severely limited so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."  *Id.* (quotations omitted).

"Confirming an arbitration award is much easier."  *Pacelli v. Vane Line Bunkering, Inc.*, 549 F. Supp. 3d 306, 313 (S.D.N.Y. 2021).  Under section 9 of the FAA, "a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected."  *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (quoting 9 U.S.C. § 9).  "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."  *D.H. Blair & Co.*, 462 F.3d at 110 (quotations omitted).

### III.  Discussion

### A.    Motion to Vacate

The Court begins with Green's motion to vacate the Final Award.  Green relies on two grounds for vacating the award: a manifest disregard of the law and fundamental unfairness.  First, Green contends that the arbitrator manifestly disregarded the law by awarding over $900,000 in

damages stemming from Fabre receiving agency fees and by not considering Green's financial circumstances when awarding Spire Spirits attorneys' fees for the arbitration.  Next, he argues that the arbitrator committed misconduct by limiting discovery into the valuation for one of Sire Spirits's subsidiaries and by allegedly limiting evidence surrounding Jackson's social media posts. The Court will take each argument in turn.

### 1.  Manifest Disregard of the Law

"An arbitral award may be vacated for manifest disregard only where a petitioner can demonstrate both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well-defined, explicit, and clearly applicable to the case."  *Porzig*, 497 F.3d at 139 (quotations omitted).  Under this exacting standard, a petitioner "bears a heavy burden" to show that his case is one of the "exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent."  *Seneca Nation of Indians*, 988 F.3d at 625-26.  Or put just a bit differently, "the award should be enforced, despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached."  *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (quotations omitted).

### i.  Fabre Related Damages

Green first contends that the arbitrator manifestly disregarded the law by awarding Sire Spirits $948,096 in damages stemming from agency fees that Fabre received on every bottle of cognac that Sire Spirits purchased from Ragnaud.  To recap, Green knew that Fabre was receiving these agency fees, but failed to disclose them to Sire Spirits.  Partial Final Award at 12.  The arbitrator found that Green's failure to disclose the fees violated his fiduciary duty to Sire Spirits

and his Employment Agreements.  *Id.*   Green makes two arguments on why the arbitrator manifestly disregarded the law in making these findings.

First, Green claims that the arbitrator erred because the only scenario in which the arbitrator could award the damages for the Fabre agency fees is if the arbitrator found a conspiracy.  *See* Green Br. at 11.  That is not the case.  Other causes of action could give rise to these damages, including a breach of fiduciary duty and breach of contract.  Here, the arbitrator found Green liable for the Fabre agency fees because Green breached his fiduciary duty and his contractual agreement. *See* Partial Final Award at 12.  Green in his reply brief appears to implicitly acknowledge that these causes of action could give rise to the challenged damages, and instead argues that there was insufficient proof to sustain such causes of action here.  *See* Green Reply at 6-7; *see also* Partial Final Award at 6-7.

That brings the Court to Green's second argument.  Green claims that the arbitrator erred by not "conduct[ing] a proximate cause analysis to determine whether the alleged breach, in this case a non-disclosure, caused plaintiff's damages."  Green Reply at 7.  In his view, the arbitrator needed to explicitly perform that analysis because to find a person liable for breach of contract or fiduciary duty under New York law, a plaintiff must show that a non-disclosure caused the loss. *See id.*; *see also Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52-53 (2d Cir. 2011) ("Causation is an essential element of damages in a breach of contract action; and, as in tort, a plaintiff must prove that a defendant's breach directly and *proximately caused* his or her damages."); *LNC Invs., Inc. v. First Fidelity Bank, N.A.*, 173 F.3d 454, 465 (2d Cir. 1999) ("[W]here damages are sought for breach of fiduciary duty under New York law, the plaintiff must demonstrate that the defendant's conduct proximately caused injury in order to establish liability.").

This argument misunderstands what an arbitrator must do in issuing an award. "The arbitrator's rationale for an award need not be explained" for an award to be confirmed. *D.H. Blair*, 462 F.3d at 110. In other words, the arbitrator need not have included an explicit proximate cause analysis in his Partial Final Award. Indeed, this Court must affirm the award "if a ground for the arbitrator's decision can be inferred from the facts of the case." *Id.* (quotations omitted).

Here, grounds for finding proximate cause can easily be inferred from the facts. If Green had disclosed that Fabre received an agency fee on every bottle of cognac that Sire Spirits bought, Sire Spirits would have known that it was paying extra money—on top of the cost for the product—for every bottle of cognac to account for that fee. With this knowledge, Sire Spirits could have then negotiated with Ragnaud to lower or remove this agency fee. And Sire Spirits likely would have had leverage for these negotiations. The agency fee went to an executive who worked for a *different* company and who had little to do with Sire Spirits's contract with Ragnaud. In contrast, without this knowledge, Sire Spirits did not know that Ragnaud was paying Fabre a fee for every bottle sold to Sire Spirits. Thus, there is a colorable justification that Green caused Sire Spirits $948,096 in damages, representing the agency fees paid by Ragnaud to Fabre (*i.e.*, the excess purchase price Sire Spirits unknowingly paid for Ragnaud's cognac). *See Fed. Ins. Co. v. Mertz*, No. 12 Civ. 1597 (NSR) (JCM), 2016 WL 164618, at \*7 (S.D.N.Y. Jan. 12, 2016) ("When the parties are claiming fraud [in a breach of fiduciary duty case], the measure of damage is the actual pecuniary loss sustained as the direct result of the wrong." (quotations omitted)).

### ii.   Attorneys' Fees in Arbitration

Green next argues that the arbitrator manifestly disregarded the law by declining to consider Green's financial status in awarding Sire Spirits attorneys' fees for the arbitration. He contends that an arbitrator may only grant a remedy that would have been available to the parties

had the matter been heard in court.  Green Br. at 12.  And in his view, the law requires that courts consider a party's financial circumstances when awarding attorneys' fees.  *Id.*

To begin with, New York law does not always require courts to consider a party's ability to pay.[4]  Under New York law, "when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable."  *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987).  New York courts have therefore held that if a contract "unambiguously" says that "the prevailing party [is] entitled to recover its commercially reasonable attorneys' fees, costs and disbursements," then an "arbitrator lack[s] any discretion under the agreement to decline to award petitioner its reasonable legal fees, as the prevailing party."  *Bowery Residents' Comm., Inc. v. Lance Cap., LLC*, 995 N.Y.S.2d 2, 3 (App. Div. 2014).

Here, the arbitrator interpreted the Employment Agreements as entitling the prevailing party to reasonable attorneys' fees and expenses.  Partial Final Award at 14-15; *see* 2018 Employment Agreement ¶ 21 ("In the event that any suit, action or arbitration proceeding is instituted under or in relation to this Agreement, the prevailing party in such dispute shall be entitled to recover from the losing party all fees, costs and expenses of enforcing or defending any right of such prevailing party under or with respect to this Agreement . . . ."); 2019 Employment Agreement ¶ 21 (same).  Green does not challenge this interpretation.  The only question is

_____

[4] The Court applies New York state law because "[f]ederal courts sitting in diversity apply state law to determine an award of attorney fees and costs."  *Aurora Com. Corp. v. Approved Funding Corp.*, No. 13 Civ. 230 (RPP), 2014 WL 3866090, at *2 (S.D.N.Y. Aug. 6, 2014); *see Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005) (explaining that in diversity cases, courts apply state "substantive law to resolve . . . dispute[s] regarding [a party's] entitlement to attorney's fees").

therefore whether the arbitrator manifestly disregarded the law because the amount of awarded attorneys' fees was unreasonable given Green's alleged inability to pay.

The answer is no. There is a colorable justification that New York law did not require the arbitrator to consider Green's ability to pay in determining a reasonable attorney fee. "New York Courts have broad discretion in determining what constitutes reasonable compensation for legal services." *RMP Cap., Corp. v. Victory Jet, LLC*, 977 N.Y.S.2d 670 (Table), at *6 (N.Y. Sup. 2013), *aff'd as modified,* 32 N.Y.S.3d 231 (App. Div. 2016). In exercising this discretion, "the court may consider a number of factors including the time spent, the difficulties involved in the matters in which the services were rendered, the nature of the services, the amount involved, the professional standing of the counsel, and the results obtained." *Granada Condo v. Morris*, 639 N.Y.S.2d 91, 92 (N.Y. App. Div. 1996) (quotations omitted). At bottom, a reasonable attorneys' fee is generally the hourly rate that the market would pay multiplied by a reasonable number of hours. *See RMP Cap. Corp.*, 32 N.Y.S.3d at 236 ("[T]he determination [of reasonable attorneys' fees] must be based upon a demonstration of the hours reasonably expended on the litigation and what is reasonable compensation for the attorney based upon the prevailing rate for similar work in the community.").

Green, in contrast, has identified no New York case law that requires consideration of a party's ability to pay when a contract contemplates the award of attorneys' fees to the prevailing party. Instead, Green points to case law in this Circuit requiring courts to consider ability to pay when (1) a *federal* statute or rule gave the court discretion to decide whether to award attorneys'

fees[5] or (2) the court exercised equitable discretion in deciding to award attorneys' fees.[6]  *See* Green Br. at 12-13; Green Reply at 8.  Unlike those cases, the arbitrator here had to look to *state* law to determine whether Sire Spirits was entitled to attorneys' fees and the amount of those fees, with New York law requiring the arbitrator to award Sire Spirits' reasonable attorneys' fees.  Given these differences, the arbitrator had a colorable justification in distinguishing the case law that Green cited.  *See* Final Award at 3.

Yet even if the arbitrator had discretion to decline to award Sire Spirits attorneys' fees, *see* Final Award at 2, at least one court in this District has recognized that an arbitrator would not manifestly disregard the law in that circumstance.  *See Toroyan v. Barrett*, 495 F. Supp. 2d 346, 351 (S.D.N.Y. 2007).  In *Toroyan*, the arbitration agreement said, that "the costs of mediation including reasonable legal fees and costs, shall be borne by either or both of the parties in whatever proportion as the mediator may award."  *Id.* at 349 n.1.  In following this contractual provision, the arbitrator did not consider the respondent's ability to pay, which the respondent claimed manifestly disregarded the law.  *See id.* at 351.  The court in *Toroyan* rejected this argument.  It held that caselaw saying that courts "should consider a party's ability to pay in awarding attorneys' fees . . . is not explicitly applicable to an *arbitrator's* award of attorney's fees."  *Id.* (quotations

---

[5] *See Toliver v. Cnty. of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992) (reviewing attorneys' fees awarded under 42 U.S.C. §§ 1981 and 1983); *Johnson v. N.Y.C. Transit Auth.*, 823 F.2d 31, 32 (2d Cir. 1987) (per curiam) (reviewing attorneys' fees under 42 U.S.C. §§ 1988 and 2000e-5(k) and Federal Rule of Civil Procedure 11); *Oliveri v. Thompson*, 803 F.2d 1265, 1271-75, 1281 (2d Cir. 1986) (reviewing attorneys' fees under 42 U.S.C. § 1988, 28 U.S.C § 1927, Federal Rule of Civil Procedure 11, and the district court's inherent equitable power); *Faraci v. Hickey-Freeman Co.*, 607 F.2d 1025, 1028 (2d Cir. 1979) (reviewing attorneys' fees under 42 U.S.C. § 2000e-5(k)); *Colucci v. N.Y. Times Co.*, 533 F. Supp. 1011, 1012-14 (S.D.N.Y. 1982) (awarding attorneys' fees under 42 U.S.C. § 2000e-5(k)).

[6] *Shangold v. Walt Disney Co.*, 275 F. App'x 72, 74 (2d Cir. 2008) (awarding attorneys' fees as a sanction for misconduct); *Sassower v. Field*, 973 F.2d 75, 81 (2d Cir. 1992) (same); *Esposito v. Suffolk Cnty. Cmty. Coll.*, 517 F. Supp. 3d 126, 134 (E.D.N.Y. 2021) (same).

omitted).  And it noted that "[t]his is particularly so where the parties have consented in advance to be bound by the arbitrator's exercise of discretion in determining reasonable attorneys' fees." *Id.*

The Court finds *Toroyan*'s reasoning persuasive.  And much like in *Toroyan*, the parties consented to be bound by the arbitrator exercising his discretion in determining reasonable attorneys' fees.  The Employment Agreements stated that the prevailing party is "entitled" to recover "all fees, costs and expenses of enforcing or defending any right," including "reasonable fees and expenses of attorneys."   2018 Employment Agreement ¶ 21; 2019 Employment Agreement ¶ 21; Pet. ¶ 13.

In sum, the arbitrator did not manifestly disregard the law in not considering Green's ability to pay when fashioning the amount of attorneys' fees and costs.  There was no "well defined, explicit, and clearly applicable" law that required him to do so.  *Bear, Stearns Co. v. 1109580 Ontario*, 409 F.3d 87, 90 (2d Cir. 2005).

### 2.  Arbitrator Misconduct

Procedural questions in an arbitration, "such as which witnesses to hear and which evidence to receive or exclude, are left to the sound discretion of the arbitrator and should not be second-guessed by the courts."  *NFL Mgmt. Council v. NFL Players Ass'n*, 820 F.3d 527, 545 (2d Cir. 2016).  Thus, "[a]rbitrators do not need to comply with strict evidentiary rules, and they possess substantial discretion to admit or exclude evidence."  *Id.* (quotations omitted).

But the FAA's third ground for vacating an arbitration award—arbitrator misconduct— does create a "narrow exception" for vacating an arbitration award for issues involving procedural questions.  *Id.*  This narrow exception happens "only where there is a denial of fundamental fairness."  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quotations omitted).  Excluding evidence "concerning collateral issues not material

to the arbitrator's decision does not violate fundamental fairness." *Katz v. Cellco P'ship*, No. 12 Civ. 9193 (VLB), 2018 WL 1891145, at *6 (S.D.N.Y. Apr. 17, 2018), *aff'd,* 756 F. App'x 103 (2d Cir. 2019). So "when a party seeks to vacate an arbitration award based on evidence that is too remote an arbitration decision may not be opened up to evidentiary review." *Id.* (quotations omitted).

### i.   Discovery Surrounding Valuations for Subsidiary

Green contends that the arbitrator denied him fundamental fairness by not permitting discovery into the value of Sire Spirits's subsidiary, Sire Champagnes. He first claims that this evidence is relevant because it would have affected the damages award. *See* Green Br. at 4-7, 13-14. Green's argument is that he helped increase Sire Champagnes's valuation through his work, and that increase in value offset any damage that he caused from receiving the undisclosed agency fees. In other words, Green needed the evidence to show that he provided a value to the company that should be considered when assessing any damages resulting from the undisclosed kickbacks he received.

Green's argument misunderstands the arbitrator's award and the law. The arbitrator calculated Sire Spirits's damages by adding the amount paid in agency fees to the compensation Sire Spirits paid Green; Sire Champagnes's valuation played no role in determining damages. *See* Partial Final Award at 11-14. And the arbitrator had a colorable justification in not considering the valuation of Sire Champagnes. Green's "purported exemplary performance of his duties" in increasing Sire Champagnes's value "when he was not stealing from [Sire Spirits] does not insulate him from" disgorging his compensation and benefits. *City of Binghamton v. Whalen*, 32 N.Y.S.3d 727, 729 (App. Div. 2016). Nor would it affect the damages from the agency fees, which simply involved an undisputed calculation of the amount that was paid in undisclosed agency fees. *See*

Partial Final Award at 11 ("The dollar amounts [for the agency fees] do not appear to be in dispute.").

Green next argues that Sire Champagnes' valuation is relevant because it would support his counter-claim that "his termination was mere pretext, to provide an excuse for Sire Spirits to strip Mr. Green's valuable ownership interest in Sire Champagnes." Green Reply at 9-10. But the arbitrator rejected that Green's ownership interest played a role in his termination. The arbitrator found that "Green's taking of undisclosed commissions, which . . . increased Sire Spirits' costs, provided sufficient grounds for Sire Spirits' response, including the termination of Green's employment for cause." Partial Final Award at 8.

Arbitrators "have broad latitude in restricting inquiry into factual issues, hearing evidence, and fashioning the scope of discovery." *TRX Futures Ltd. v. Siegel*, No. 06 Civ. 15199 (BSJ), 2007 WL 9813418, at *3 (S.D.N.Y. May 3, 2007) (citations omitted). And here, the arbitrator limited discovery into an issue immaterial to deciding liability or calculating damages. The arbitrator thus did not deny Green fundamental fairness in denying his motion to compel.

### ii. Discovery Surrounding Jackson's Social Media Posts

Lastly, Green argues for vacatur based on Jackson's social media posts. He contends that at the hearing the arbitrator allowed Green only "to present three of the dozens of harassing photos and captions." Green Br. at 10. The arbitrator committed misconduct, according to Green, by not admitting all the posts because the evidence was material to his case: the "social media posts severely hamstrung Mr. Green's defense, intimidating witnesses and Mr. Green himself." *Id.* at 9.

Green's argument has several problems. First, the record the parties have provided does not suggest that the arbitrator prevented Green from presenting all the social media posts. Before the hearing, Sire Spirits filed a motion *in limine* to exclude Jackson's posts from the hearing. Dkt.

40 ("David Decl."), Exh. X.  The arbitrator denied the motion without prejudice.  *See id.*, Exh. Y ("Claimant's motion for an order excluding any documents or testimony concerning the cited ten posts from Curtis Jackson's Instagram account is denied without prejudice.  The admissibility of such posts will be determined at the hearing.").

Then during the hearing, Green's counsel said that he was "going to offer into evidence or seek have offered into evidence *three* of" Jackson's social media posts.  Dkt. 38, Exh. A ("Hearing Tr.") at 1455:21-24 (emphasis added).  When Sire Spirits objected to admitting the posts on relevancy grounds, Green's counsel again said that he sought "to admit the[] *three* posts to show exactly what Mr. Jackson is like in his unfiltered minutes when he posts these things, knowing that there is a confidentiality provision in an arbitration that he began."  *Id.* at 1461:1-6 (emphasis added).  The arbitrator then overruled Sire Spirits' objection, yet noted his doubt as to the posts' relevance, and Green then confirmed that he only sought to admit three posts:

> Arbitrator Felsenfeld: Look, I tend to agree with [Sire Spirits's counsel] on this. Based on what I've heard so far, I don't see how this is relevant.  Now, I'm going to allow it to come in, and I'll see how, somehow, if there is a way that you weave this in your post-hearing brief to convince me of what I now view this as is wrong, well, you know, I'll keep an open mind.  But I got to tell you, to me, based on what I've heard so far, this is an enormous stretch.  And I don't as we sit here now, I don't see that it's relevant.  I'll allow it to come in.
>
> [Green's Counsel]: Okay.  We're seeking to offer the one of Mr. Green, the one of Mr. Jackson, and then the one by Mr. Jackson regarding Mr. Green's wife.
>
> Arbitrator Felsenfeld: I'll humor you with all three of those.
>
> [Green's counsel]: All right.  Let's change topics.

*Id.* at 1462:10-1463:7.

Green points to no other point during the hearing in which he sought to introduce the other social media posts and the arbitrator denied the request.  And in his post-hearing brief, Green never claimed that the arbitrator prevented him from introducing the other social media posts.  *See* Cross-

Pet., Exhs. 4, 6.  Green now claims, however, that the "arbitrator's reaction that the posts were not relevant and the arbitrator's statement that he was only willing to 'humor' Mr. Green" restricted the evidence that he could present.  But the evidence that Green provided does not support a conclusion that Green was in fact restricted from presenting any social media posts at the arbitration hearing.  *See Inficon, Inc. v. Verionix, Inc.*, 182 F. Supp. 3d 32, 41 (S.D.N.Y. 2016) ("Although [the petitioner] claims the[] Panel comments restricted its evidentiary presentation, the failure to identify any evidence it was restricted from presenting requires rejection of [the petitioner's] failure to consider challenge.").  Thus, the arbitrator did not deny Green a fundamentally fair hearing when Green "did not avail [himself] of the opportunity to be heard by proffering further evidence" of the social media posts.  *Oracle Corp. v. Wilson*, 276 F. Supp. 3d 22, 31 (S.D.N.Y. 2017); *see also Capgemini U.S. LLC v. Sorensen*, No. 04 Civ. 7584 (JGK), 2005 WL 1560482, at *7 (S.D.N.Y. July 1, 2005) (explaining that because the petitioner had notice and an opportunity to be heard before the close of the hearing, the petitioner "cannot now argue that it was denied a fundamentally fair hearing when it did not avail itself of the opportunity to be heard"); *Matter of Arbitration between Carina Int'l Shipping Corp. & Adam Mar. Corp.,* 961 F. Supp. 559, 567 (S.D.N.Y. 1997) ("By its own tactical choice, [respondent] waived the right to argue that the awarding panel committed misconduct under 9 U.S.C. § 10(a)(3) by not re-opening the evidentiary hearings.").

Second, even if the arbitrator had excluded the remaining posts, he acted within his discretion in doing so.  The three social media posts that Green offered, along with Green's testimony about the posts, involved pictures (and Jackson's comments) of Green, Green's wife, and others involved in the facts underlying this case, including Fabre.  *See* Hearing Tr. at 1455:25-

1456:1, 1456:10-12, 1460:15-17.[7]   Green claimed that these posts showed Jackson's alleged "witness intimidation" to Green and other witnesses.  Cross-Pet. ¶¶ 6, 50-66; Green Br. at 7-10, 13-14; Hearing Tr. at 1454:23-1455:15.  The other social media posts simply provided more evidence of this alleged intimidation.  *See* Cross-Pet., Exhs. 14-25.  The arbitrator could therefore "properly have declined to consider the additional [social media posts] and rejected it as cumulative." *Fairchild Corp. v. Alcoa, Inc.*, 510 F. Supp. 2d 280, 289 (S.D.N.Y. 2007); *see id.* ("The case law makes clear . . . that an arbitrator has discretion to admit or reject evidence and determine what materials may be cumulative or irrelevant.").

Third, even if the arbitrator erroneously excluded the remaining social media posts, it would still not provide a reason to vacate the award.  Green only provides conclusory allegations that Jackson's posts intimidated witnesses.  He cites no witnesses who refused to testify because of Jackson's posts.  *See* Green Br. at 9-10, 12-14; Green Reply at 10-11.  In fact, Green never even sought a subpoena to force a witness to testify.  *See* David Decl., Exh. X at 2.  Any disadvantage to Green arising from a witness not testifying at the arbitration hearing is due to his own failure to seek to compel that witness's testimony.

Yet even if Jackson's posts had intimidated witnesses, and those witnesses would have ignored a subpoena, Green's claim still would fail.  Green has offered no argument that these hypothetical intimidated witnesses would have testified on anything *material* to the proceeding.  After all, Green would only have been deprived of a fundamentally fair hearing if the witness would have testified on a material matter.  *See* 9 U.S.C. § 10(a)(3) (permitting vacating an award

---

[7] Green did not specify in his briefing which three social media posts from the exhibits he attached to his Cross-Petition he introduced at the arbitration.  From the descriptions in the Hearing Transcript, it appears that at least two of the three introduced social media posts are found at pages 16 and 22 of Exhibit C to the Breslin Declaration.

when "the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy").

In any event, the only witness even plausibly intimidated was Green himself.  He testified that upon seeing the posts:

> I took screen shots of them right away.  Then I sent them to counsel, because, to me, this was a threat.  It was intimidation.  It also happened to be timed where most of the posts were made a day after we had done something, in terms of this arbitration, in terms of pushing back, on something or so on.  You know, initially, when we started seeing some of the posts – or the first post, I believe, was Mr. Jackson talking about going to court, and it being cheaper to shoot someone. . . . When I saw that, I was scared, and to the point where my wife and I actually started looking outside because we were concerned and worried that [Jackson] might go that far.

Hearing Tr. at 1454:21-1455:15.  Despite Green alleging that the posts intimidated him, Green still extensively testified at the hearing.  And Green does not argue that he refused to testify about anything material to the hearing because he was intimated by Jackson.  Indeed, Green does not even argue that he refused to testify about *any* topic because of the social media posts.  Thus, even assuming everything that Green argues is true, his claim would still fail because there is no evidence that it affected anything material to the arbitration proceeding.

## B.    Motion to Confirm

Having denied Green's request to vacate the arbitration award under section 10(a) of the FAA, the Court turns to Sire Spirits's request to confirm the arbitration award under section 9 of the FAA.  As discussed, the Court "must" grant this relief "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the FAA.  9 U.S.C. § 9.  And as detailed above, "[t]here is no evidence in the record that the award was procured by corruption, fraud, or undue means; that . . . the arbitrator[] [was] partial or corrupt; that the arbitrator[] [was] guilty of any misbehavior prejudicing the rights of any party; that the arbitrator[] exceeded or imperfectly executed [his] power[]; or that there was a manifest disregard of the law."  *Clearwater Ins. Co. v.*

*Granite State Ins. Co.*, No. 15 Civ. 165 (RJS), 2015 WL 500184, at *2 (S.D.N.Y. Feb. 5, 2015). The Court therefore grants Sire Spirits's petition to confirm the award.

## C.     Attorneys' Fees and Costs

Lastly, Sire Spirits seeks attorneys' fees and costs that it incurred in seeking to confirm the award and in opposing Green's petition to vacate the award.  As discussed, under the Employment Agreements, "the prevailing party" in "any suit, action or arbitration proceeding [] instituted under or in relation to this Agreement . . . shall be entitled to recover from the losing party all fees, costs and expenses of enforcing or defending any right of such prevailing party, . . . including without limitation, such reasonable fees and expenses of attorneys and accountants."  2018 Employment Agreement ¶ 21; 2019 Employment Agreement ¶ 21; Pet. ¶ 13.

This suit arose from the Employment Agreements.  The arbitrator found that Green breached the Employment Agreements and awarded Sire Spirits its attorneys' fees for the arbitration.  Accordingly, the arbitrator determined that the arbitration related to the Employment Agreements.  This action to confirm or vacate the award therefore also relates to the Employment Agreements.  Sire Spirits thus has the right to attorneys' fees and costs incurred from this action. *See, e.g.*, *Loeb v. Blue Star Jets, LLC*, No. 09 Civ. 7858 (SAS), 2009 WL 4906538, at *3 (S.D.N.Y. Dec. 17, 2009) ("[T]his action to confirm the Award also arises from . . . [a] b[r]each of the Agreement and the [prevailing parties] are entitled to attorneys' fees and costs incurred as a result of this petition.").[8]

---

[8] On December 28, 2021, the Court provisionally granted Green's motion to file redacted versions of various exhibits in support of his motion to vacate the award.  *See* Dkt. 32 at 1-2 (provisionally granting the motion pending at Docket Number 20).  The Court explained that it would "issue a final decision on whether to maintain these publicly filed redactions after deciding the petition and motion."  *Id.* at 2.  The Court did not rely on these documents in resolving the parties' motions.  The Court finds that these exhibits are "not 'judicial documents' to which the

## IV.  Conclusion

For all the reasons given, the Court denies Green's petition to vacate the Final Award and grants Sire Spirits's petition to confirm the Final Award, which fully incorporates the Partial Final Award.  *See* Final Award at 2 ("The Partial Final Award, dated August 25, 2021, is incorporated into this Final Award as if restated in full herein.").  The Court also awards Sire Spirits its reasonable attorneys' fees and costs incurred from this case, with the amount to be determined after additional briefing.  By June 20, 2022, Sire Spirits shall file briefing on the attorneys' fees and costs incurred from this action.  Any opposition to the attorneys' fees and costs sought is due by July 5, 2022, with a reply, if any, due by July 12, 2022.  The Clerk of the Court is respectfully directed to close the motion pending at Docket Number 35.

SO ORDERED.

Dated: June 6, 2022
       New York, New York

_____
JOHN P. CRONAN
United States District Judge

---

common law and First Amendment right of public access applies because they were not relevant to the Court's performance of a 'judicial function' nor are they 'useful in the judicial process.'" *Moshell v. Sasol Ltd.*, No. 20 Civ. 1008 (JPC), 2021 WL 3163600, at *1 (S.D.N.Y. July 24, 2021) (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)).  Yet even if the redacted documents are considered judicial documents, the presumption of public access is outweighed by competing considerations.  Most of the proposed redactions involve confidential business information of a privately owned business.  *See* Dkts. 21-1, 21-2, 21-3, 21-5, 21-6.  These redactions are narrowly tailored to protect the business's competitive business information.  *See Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (finding that redactions involving a "confidential business [i]formation" for "a closed business" "implicate[d] legitimate privacy interests" and were narrowly tailored); *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) ("Financial records of a wholly owned business . . . will weigh more heavily against access than conduct affecting a substantial portion of the public.").  The remaining proposed redactions involve personal information of Sire Spirits's employees, such as email addresses and phone numbers.  *See* Dkt. 21-4.  These redactions are also narrowly tailored to protect the employees' privacy interests.  *See, e.g.*, *Al Thani v. Hanke*, No. 20 Civ. 4765 (JPC), 2021 WL 2789276, at *1 (S.D.N.Y. Jan. 15, 2021) (finding that redactions involving personal information about non-party investors were "narrowly tailored to protect the investors' privacy interests").  The Court will therefore maintain the unredacted exhibits under seal.